IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEADFAST INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § § § | |
| v. | § § | CIVIL ACTION NO. 4:06-cv-2736 |
| SMX 98, INC. AND SPAW MAXWELL COMPANY, L.P., | § § § | |
| Defendants. | § § | |

**PLAINTIFF STEADFAST INSURANCE COMPANY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO STRIKE THE AFFIDAVIT OF MARK CRAWSHAW**

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff Steadfast Insurance Company ("Steadfast") files this Response to SMX 98, Inc. and Spaw Maxwell Company L.P.'s (collectively "Defendants") Motion for Partial Summary Judgment and Plaintiff's Motion to Strike the affidavit of Mark Crawshaw would show the Court as follows:

I.
**SUMMARY OF ARGUMENT**

1.   Defendants' motion for partial summary judgment should be denied as a matter of law because:

(a)   Defendants cannot rely on the affidavit of Mark Crawshaw whom Defendants have not timely designated as an expert in this lawsuit and the consideration of his affidavit would be improper;

(b)   The affidavit of Mark Crawshaw containing his actuarial opinions should be struck from the summary judgment record because it is irrelevant, unhelpful, and does not go to a fact at issue;

(c) The affidavit of Mark Crawshaw should be struck from the summary judgment record because it has no factual support for the application of actuarial principles;

(d) When the applicable rules of contractual interpretation are applied to the subcontractor's warranty endorsement, Defendants' proffered interpretation is erroneous;

(e) Defendants' proffered interpretation is nothing more than an attempt to rewrite the subcontractor's warranty endorsement;

(f) Defendants' proffered interpretation does not examine, consider, harmonize, or give effect to all the provisions of the entire subcontractor's warranty endorsement;

(g) Defendants' proffered interpretation of the subcontractor's warranty endorsement renders provisions meaningless;

(h) Defendants' proffered interpretation of the subcontractor's warranty endorsement isolates a particular phrase from its setting and attempts to give controlling effect to a single provision;

(i) The subcontractors warranty endorsement in the agreement is not a liquidated damages clause as a matter of law;

(j) The subcontractors warranty endorsement in the agreement is legal and permissible under the Texas Insurance Code; and

(k) The Texas Insurance Code does not apply to nor prohibit the surcharge contained in the subcontractors warranty endorsement as a matter of law.

## II.
## RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

A. MOTION TO STRIKE THE AFFIDAVIT OF MARK CRAWSHAW

1. <u>This Court Should Strike the Affidavit of Mark Crawshaw Because Defendants Did Not Timely Designate Him as an Expert</u>

2. In their motion for summary judgment, Defendants attempt to rely upon the affidavit of an expert which has not been designated. Currently, pending before this Court is Defendants motion for leave to late designate the very expert they rely on in their summary judgment.

3. Steadfast moves to strike the affidavit of Mark Crawshaw because Mr. Crawshaw has not been timely designated to testify in this case and thus his affidavit cannot be considered as summary judgment evidence. At the summary judgment stage, this Court is clearly authorized to strike the affidavit of an untimely designated expert. *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir.1990).

4. A summary judgment affidavit may not contain expert testimony unless the affiant has first been designated an expert witness under Federal Rule of Civil Procedure 26(a)(2). The purpose and practical effect of a Rule 26 designation of a testifying expert is to make the expert available for deposition by the opposing party. Steadfast is clearly prejudiced as it has not had an opportunity to conduct cross-examination.

5. If Defendants are allowed to rely on an undesignated expert affidavit without this Court granting them leave to late designate, then Defendants are circumventing the purpose of designation, this Court's docket control order, and the Rules of Civil Procedure. FED. R. CIV. P. 26, 56(e).

6. Because Defendants in this case have not timely designated Mr. Crawshaw as an expert, they cannot seek to use an affidavit prepared by him in any fashion. The Crawshaw affidavit should not be admitted into evidence by this Court, because Mr. Crawshaw is undesignated.

7. Because Defendants had not designated Mr. Crawshaw, his affidavit is not competent summary judgment evidence. Steadfast requests that the affidavit of Mr. Crawshaw be stricken as he was not timely designated as an expert witness.

## 2. This Court Should Strike the Affidavit of Mark Crawshaw Because it is Irrelevant, Unhelpful, and Does Not Go to a Fact at Issue

8.   Even if the undesignated expert's affidavit is accepted, the affidavit is not competent summary judgment evidence. Mr. Crawshaw's affidavit is inadequate to support Defendants motion for summary judgment because it is irrelevant to any fact at issue in this lawsuit. Steadfast moves to strike the affidavit of Mr. Crawshaw because Mr. Crawshaw's affidavit is irrelevant.

9.   Affidavit evidence presented in support of a summary judgment position must be admissible under the rules of evidence. FED. R. CIV. P. 56(e). Federal Rule of Evidence 401 defines relevance to include evidence tending "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.

10.   The Fifth Circuit tests all expert testimony for relevance. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir.2002) (citing *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993)). Further, expert opinion testimony is admissible only if it is helpful to the jury in understanding the evidence or determining a fact in issue. *See* FED. R. EVID. 702.

11.   Mr. Crawshaw's actuarial opinions about the reasonableness (or not) of the surcharge of $20 per $1000 of sub cost in the subcontractors warranty endorsement is not relevant to any fact at issue because the surcharge was not based on any actuarial rate-making principles. (See Exhibit "1" - Affidavit of Michelle Wildman).[1]

12.   Mr. Crawshaw's entire opinion is based on the assumption that Steadfast used actuarial principles (reasonable and unreasonable) in determining the surcharge

---

[1] Exhibits "1" and "2" are attached hereto and incorporated herein as if a part of this documents for all purposes.

that went into the subcontractor's warranty endorsement. This assumption is untrue. No actuarial principles were relied upon in determining the surcharge. *Id.* Thus, actuarial principles are of no consequence to the determination of this case because the surcharge was not based on any actuarial rate-making principles. If no actuarial principles were utilized in the first place, whether the actuarial principles were either reasonable or unreasonable is of no relevance.

13. As a result, Mr. Crawshaw's actuarial opinion is wholly irrelevant to the determination of any issue in this case. Defendants must show this Court that Mr. Crawshaw's opinion is relevant before it can be admissible. Defendants cannot establish relevance because the fact is that no actuarial principles were relied upon in determining the surcharge. Therefore, Mr. Crawshaw's opinion based on actuarial principles cannot controvert the surcharge. Therefore, Steadfast requests that the affidavit of Mr. Crawshaw be stricken as it is irrelevant to this summary judgment.

14. Further, as no actuarial principles were relied upon in determining the surcharge, Mr. Crawshaw's actuarial opinion testimony will not help the jury to understand any evidence or determine a fact in issue. Therefore, Steadfast requests that the affidavit of Mr. Crawshaw be stricken as it does not comply with Federal Rule of Evidence 702.

3. <u>This Court Should Strike the Affidavit of Mark Crawshaw Because it has no factual support for the application of actuarial principles</u>

15. The affidavit is unreliable as competent summary judgment evidence because it is not based on actual facts. Mr. Crawshaw's affidavit should be stricken because it is based on an assumption that actuarial principles were used in determining the subcontractor's warranty endorsement, a fact that is not been established.

16. In the context of summary judgment, Federal Rule of Evidence 705 requires an expert's affidavit to contain factual support for the opinion expressed therein. *See Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 331 (5th Cir.1998). While the Court has broad discretion to rule on the admissibility of an expert's evidence, for the purposes of summary judgment, "an expert affidavit must include materials on which the expert based his opinion, as well as an indication of the reasoning process underlying the opinion." *Id.* at 331; *see also Hayter v. City of Mount Vernon*, 154 F.3d 269, 274 (5th Cir.1998).

17. A party seeking to introduce expert testimony must show that the testimony is based upon sufficient facts and the expert has applied his principles and methods reliably to the facts of the case. *See* Fed. R. Evid. 702. As to actuarial principles, Mr. Crawsahw's opinion is not based on any fact, but instead on an incorrect assumption that Steadfast utilized actuarial principles in determining the surcharge in the subcontractor's warranty endorsement. Further, this unreliable assumption has been refuted by the testimony of Michelle Wildman who has established that no actuarial principles were relied upon in determining the surcharge. (See Exhibit "1" - Affidavit of Michelle Wildman). Mr. Crawshaw's opinion cannot controvert the actual facts established by Ms. Wildman's affidavit.

18. Because there are no sufficient facts on which to base the application of actuarial principles in this lawsuit, Mr. Crawshaw's affidavit is unreliable and not competent summary judgment evidence. Steadfast requests that the affidavit of Mr. Crawshaw be stricken as his opinion contains no factual support for the application of actuarial principles.

B.   DEFENDANTS WANT THE COURT TO GIVE THEM A NEW CONTRACT

19.   Defendants are unhappy with the agreement they entered into and move this Court to rewrite the agreement and focus on a single term in order to change the contract to one which better serves their interests.

20.   When the applicable rules of contractual interpretation are applied to the subcontractor's warranty endorsement, it becomes clear that Defendants' interpretation is inconsistent with the rules of contractual interpretation of the subcontractors warranty endorsement.

21.   Under Texas law, an insurance policy is a contract and is therefore subject to rules of contract interpretation. *F.D.I.C. v. Firemen's Ins. Co. of Newark, NJ*, 109 F.3d 1084, 1087 (5th Cir.1997); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). Under Texas law, "[i]n construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003); *Petula Associates, Ltd. v. Dolco Packaging Corp.*, 240 F.3d 499, 504 (5th Cir.2001).

22.   To achieve this objective, this Court should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983).

23.   Courts must take care not to isolate particular phrases or sentences from their setting, and no single provision taken alone will be given controlling effect. *Bexar County Hosp. Dist. v. Factory Mut. Ins. Co.*, 475 F.3d 274 (5th Cir.2007); *Coker*, 650 S.W.2d at 393; *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex.1962).

24. In other words, this Court must presume that the parties intended every clause to have some effect and consider each part of the document with every other part of the document so that the effect and meaning of one part on any other part may be determined. *Consol. Petroleum Partners, I, LLC v. Tindle*, 168 S.W.3d 894, 898-99 (Tex.App.-Tyler 2005, no pet.); *Birnbaum v. Swepi LP*, 48 S.W.3d 254, 257 (Tex.App.-San Antonio 2001, pet. denied).

25. Finally, courts are not permitted to rewrite an agreement to mean something it did not. *Tindle*, 168 S.W.3d at 899; *Birnbaum*, 48 S.W.3d at 257. Courts cannot change the contract simply because one of the parties comes to dislike its provisions. *Tindle*, 168 S.W.3d at 899; *Birnbaum*, 48 S.W.3d at 257.

26. Parties to a contract are masters of their own choices and are entitled to select what terms and provisions to include in or omit from a contract. *Tindle*, 168 S.W.3d at 899; *Birnbaum*, 48 S.W.3d at 257. In sum, the parties strike the deal they choose to strike, and, in doing so, they are bound by the agreement as written. *Emmer v. Phillips Petroleum Co.*, 668 S.W.2d 487, 490 (Tex.App.-Amarillo 1984, no writ).

27. The subcontractors warranty endorsement contains four promises which Defendants make to Steadfast. (See DEN 36, Exhibit "B", endorsement 10, subcontractor's warranty endorsement or DEN 37, Exhibit "A" both incorporated herein for all purposes).

28. Defendants promise that all of Defendants' subcontractors will: (1) maintain commercial general liability insurance coverage provided by an insurance company with an "A+" Best rating or better; (2) have insurance which provides minimum limits as respects Coverage A. Bodily Injury or Property Damage of $1 million Each occurrence. $1 million General Aggregate, $1 million Products completed Operations

Aggregate; (3) have Defendants added to the subcontractors' policies as an additional insured; and (4) provide Defendants with Certificates of Insurance showing the coverage requirements indicated above.

29.     Under the subcontractors warranty endorsement, if Defendants failed to comply with the conditions above, they are charged a surcharge of $20 per $1000 of uninsured/uninsured sub cost. (Subcontractors Warranty Endorsement, p.2).

30.     Without support or authority, Defendants argue that the term "uninsured/uninsured" means that a surcharge can *only* be applied to those subcontractors who had no insurance at all. This is a strained interpretation which abandons the rules of contract interpretation.

31.     Defendants attempt to isolate the "uninsured/uninsured" term from its setting and give controlling effect to this single term. Defendants' analysis does not consider the entire subcontractor's warranty endorsement in an effort to harmonize and give effect to all its provisions.

32.     Defendants' argument renders meaningless the promise that all of Defendants' subcontractors will maintain commercial general liability insurance coverage provided by an insurance company with an "A+" Best rating or better. If Defendants are to be believed, there is no surcharge owed for subcontractors who had insurance with a carrier which was Best rated "A" or below.

33.     This is not the clearly expressed intent of the subcontractors warranty endorsement. If this were the intent, the endorsement would simply contain a requirement that all of Defendants' subcontractors are to maintain commercial general liability insurance coverage, period. The endorsement requires more than that. The endorsement requires that all Defendants' subcontractors are to maintain commercial

general liability coverage provided with an insurance company with an A+ Best rating or better. If Defendants' interpretation is allowed to control, then the promise that Defendants' subcontractors would maintain commercial general liability insurance coverage provided by an insurance company with an "A+" Best rating or better is rendered meaningless. Defendants will have then achieved their purpose of getting a new contract and not the one they bargained for.

34. The subcontractor's warranty endorsement must be interpreted as a whole without isolating any one term and/or rendering any part of the endorsement as meaningless. Reading the endorsement as a whole, the intent is clear that the subcontractor's warranty endorsement can only be correctly interpreted to allow for the application of a surcharge for Defendants' subcontractors who had insurance with an insurance carrier below an "A+" Best rating. To hold otherwise would be to rewrite the agreement to mean something it did not mean.

35. As Defendants interpretation is erroneous as a matter of law, Defendants motion for partial summary judgment that the subcontractor's warranty endorsement only requires a surcharge for Defendants' subcontractors who had no insurance at all should be denied.

C. SUBCONTRACTORS WARRANTY ENDORSEMENT IS NOT A LIQUIDATED DAMAGES CLAUSE

36. Defendants have moved for summary judgment on the contention that the subcontractors warranty endorsement is not enforceable because it fails the liquidated damages analysis. However, this incorrectly assumes that the subcontractors warranty endorsement is a liquidated damages clause in the first place. Because the subcontractors warranty endorsement is not a liquidated damages clause, Defendants' Motion for Partial Summary Judgment should be denied.

37.     Whether a contract term is a liquidated damages provision is a question of law for the court to decide. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 664 (Tex.2005); *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 810 (Tex.App.-Dallas 1999, no pet.)

38.     The term liquidated damages ordinarily refers to an acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach. *Flores v. Millenium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex.2005); *see also Valence Operating*, 164 S.W.3d at 664 ("[l]iquidated damages clauses fix in advance the compensation to a party accruing from the failure to perform specified contractual obligations").

39.     Defendants contend that the subcontractors warranty endorsement is an unenforceable liquidated damages provision. Steadfast disagrees that the subcontractors warranty endorsement is a liquidated damages provision in the first place.

40.     The surcharge in the subcontractors warranty endorsement is not a liquidated damages clause because the endorsement contains no set amount stipulated to in advance which would be assessed in the event of contract breach.

41.     A liquidated damages clause is designed to substitute a sum agreed upon by the parties for any actual damages suffered as a result of a breach. Here, the surcharge is not fixed nor is it fixed in advance, it is simply an additional charge if Defendants do not have their subcontractors meet certain criteria.

42.     The surcharge in the subcontractors warranty endorsement is variable depending upon the insureds' actions or inactions. The surcharge contained in the endorsement is not a set amount stipulated in advance which would be assessed in the

event of contract breach as it is variable depending upon the amount of deficient insurance Defendants' subcontractors have.

43. The Texas Supreme Court has held that "[l]iquidated damages clauses *fix in advance the compensation* to a party accruing from the failure to perform specified contractual obligations". *Valence Operating*, 164 S.W.3d at 664 (emphasis added).

44. Because the surcharge is not fixed in advance, the endorsement is not a liquidated damages provision as a matter of law. See *Flores*, 185 S.W.3d at 431; *Valence Operating*, 164 S.W.3d at 664. Therefore, the basis for Defendants' argument, that the subcontractors warranty endorsement is an unenforceable liquidated damages provision, is erroneous.

45. At the deposition of Thomas W. Flaherty, III, the Chief Financial Officer for Spaw Maxwell Company L.P., Mr. Flaherty admitted that the subcontractors warranty endorsement contained a variable amount which was not fixed in advance:

```
5    Q.  (By Mr. Sharp)  Let's go back to that
6    endorsement again.  Let's go to page 67 and 68 for that
7    matter.
8    A.  Okay.
9    Q.  Where in that endorsement does it stipulate a
10   certain amount that SpawMaxwell will have to pay if it
11   doesn't comply with the endorsement?
12   A.  I guess in No. 2 on 68.
13   Q.  Okay.  And what's the set amount stipulated
14   there?
15   A.  It says there $20 per $1,000 of uninsured --
```

16  uninsured sub costs.

17    Q.  But that would be variable depending on the sub

18  costs, correct?

19    A.  Yes.

20    Q.  So that's not a set amount, correct?

21    A.  Okay.  Yeah -- yes, it's --

22    Q.  Is it a set amount?

23    A.  The $20 is set, and what is written there is, I

24  assume, set.  But, yes, it varies based on the amount of

25  sub costs.

ROUGH DRAFT ROUGH DRAFT ROUGH DRAFT
94

1    Q.  Yeah.  If there were no sub costs, you wouldn't

2  owe anything, correct?

3    A.  That's right.

4    Q.  And if there was a million dollars, it would be

5  $20 per $1,000 of that, correct?  So the amount varies?

6    A.  Okay.

7    Q.  And it's not set in stone?

8    A.  Okay.

9    Q.  Correct?

10    A.  Correct.

11    Q.  There's no -- there's no provision in this

12  endorsement that says "you have to pay $500 if you do

13  not comply with this endorsement," correct?

14   A.   It does not say that.

15   Q.   And there's -- nowhere in this endorsement does

16   it say that you have to pay a set amount if you don't

17   comply, correct?

18   A.   Yeah. It -- it does not give a single hard

19   cost. It has a rate -- rate per sub cost.

(See Exhibit "2" – Affidavit of Jason Sharp with excerpts from the Rough Draft of the Deposition of Thomas W. Flaherty, III conducted on August 30, 2007 attached, see p.93-94/lines 6-25 to p. 94-95/lines 1-19,).[2]

46.   Further, the surcharge is not liquidated damages because it was not agreed that it would be assessed for a breach of contract. Here, the parties never stipulated the amount of damages to be recovered in the event of a breach.

47.   In addition, the subcontractors warranty endorsement can be given a definite legal meaning. The Texas Department of Insurance defines a "surcharge" as "an extra charge added to your premium by an insurance company." (See DEN 36 - Exhibit "G" – Texas Department of Insurance – Glossary of Common Insurance Terms incorporated herein for all purposes).

48.   The surcharge is an additional charge to protect Steadfast when Defendants fail to have their subcontractors maintain the required insurance.

49.   The Defendants contend that the subcontractors warranty endorsement "fails" the liquidated damages analysis. However, to reach this incorrect conclusion, Defendants err in assuming that the subcontractors warranty endorsement constitutes a

---

[2] At the time Plaintiff's response was due the final copy of the deposition had not yet arrived. Plaintiff was working from a rough draft of the deposition. Plaintiff will supplement with the final copy of Mr. Flaherty's deposition.

liquidated damages provision in the first place. This error is fatal to their summary judgment. Because the subcontractors warranty endorsement is not a liquidated damages clause, Defendants' motion for partial summary judgment should be denied.

### D. SUBCONTRACTORS WARRANTY ENDORSEMENT IS LEGAL AND PERMISSIBLE UNDER THE TEXAS INSURANCE CODE

#### 1. The Texas Insurance Code Provisions Relied on by Defendants do not Apply to Steadfast as a Surplus Lines Insurer

50. Defendants have alleged that the subcontractors warranty endorsement is not enforceable because it is "illegal" under Texas Insurance Code art 5.13-2 § 4 (now Texas Insurance Code § 2251.052). However, neither Texas Insurance Code art 5.13-2 nor Texas Insurance Code § 2251.052 apply to Steadfast because Steadfast is a surplus lines carrier.

51. Steadfast has proved that it is a surplus lines carrier. (See DEN 36 - Exhibit "A" – Affidavit of J. Hardy Nix with Binder No. 2696102 – SFI 000226-000228 attached and Exhibit "B" – Affidavit of Sherry Totzke). Steadfast is an unlicensed insurer allowed by the commissioner to do business in Texas as a surplus lines insurer. (Exhibit "1" – Affidavit of Michelle Wildman). Further, Defendants have admitted that Steadfast is a surplus lines carrier. (DEN 34, p.5).

52. "Surplus lines insurance allows a person who seeks to insure a Texas risk but is unable to obtain that insurance from a Texas-licensed insurer to seek the insurance from an insurer who is not licensed in Texas but is an 'eligible ' surplus lines insurer." *Strayhorn v. Lexington Ins. Co.*, 128 S.W.3d 772, 775 (Tex.App.-Austin Feb 20, 2004), *aff'd*, 209 S.W.3d 83 (Tex.2006). The Texas Supreme Court has held that "[b]y definition, surplus lines insurers are not located in Texas, and have not applied for

permission to do business here." *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 88 (Tex.2006).

53. No sections of the applicable Texas Insurance Code art 5.13-2 apply to this dispute as matter of law because the entire article *only* apples to "insurance issued by a licensed insurer." *See* Tex. Ins. Code Art. 5.13-2 § 2. In this connection, the Southern District of Texas has noted the inapplicability of art. 5.13-2 to surplus lines carriers:

> Section 2 of Article 5.13-2 makes clear that policies issued by surplus lines insurers are not 'subject to this Article' and need not be approved by the Commissioner of Insurance.

*Coleridge v. Parker*, 1994 WL 907407 *7 n.4 (S.D.Tex.1994).

54. For these provisions of the Texas Insurance Code to apply here, this Court must find as a matter of law that Steadfast is not a surplus lines carrier.

55. Steadfast has proved that it is a surplus lines carrier. (Exhibits "A" and "B" to DEN 36 incorporated herein for all purposes; and Exhibit "1"). Any argument that the subcontractors warranty endorsement is not enforceable because it is "illegal" under the Texas Insurance Code has no merit as a matter of law because Steadfast is a surplus lines carrier.

2. <u>Texas Insurance Code Does Not Apply to Surcharges</u>

56. No sections of the applicable Texas Insurance Code art 5.13-2 apply to this dispute as matter of law because the entire article does not apply to surcharges. The Texas Insurance Code statutes do not apply to surcharges and nothing forbids a surcharge from being charged by an insurer.

57. Defendants cannot show this Court that there are any Texas Insurance Code statutes effective in the past or present which apply to preclude or prohibit Steadfast, as a surplus lines carrier, from charging a surcharge.

58. Defendants cannot cite any provision in the Texas Insurance Code effective at any time which restricts, forbids, or precludes Steadfast from charging a surcharge because the Texas Insurance Code statutes regarding rates do not apply to a surcharge.

59. Further, the surcharge in the subcontractors warranty endorsement is different from a rate. (See Exhibit "1" - Affidavit of Michelle Wildman). An insurance rate is the percentage relationship between the insurance premium and the coverage it buys. *Id.*

60. The surcharge is simply an extra charge if the insureds do not have their subcontractors maintain the required insurance. *Id.* The terms are separate and a "rate" does not include a surcharge. *Id.*

61. Plaintiff cannot cite any provision in the Texas Insurance Code which restricts, forbids, or precludes an insurer from charging a surcharge. The Texas Insurance Code statutes regarding rates do not apply to a surcharge. Steadfast is well within its rights to charge its insureds a surcharge.

3. <u>Surcharges are Common and Routine</u>

62. The surcharge is simply an additional charge like the late fees charged by insurers for delay in making installment payments of premiums. *See Dominzo v. Progressive County Mut. Ins. Co.*, 54 S.W.3d 867, 875 (Tex.App.-Austin 2001, pet. denied) (holding that late fees charged by insurer for insureds' delay in making

installment payments of premiums did not constitute an unenforceable liquidated damages penalty).

63. Further, surcharges are fairly common and routine in the insurance industry. For example, auto insurers may add surcharges to an insured's premium, some as high as 60 percent, based on the behavior and/or actions of the insured. The subcontractors warranty endorsement is no different, as the insureds will owe a surcharge if they fail to have their subcontractors maintain the required insurance.

64. The subcontractors warranty endorsement is not illegal under any Texas Insurance Code provision. Further, the Texas Insurance Code does not prevent surcharges on insurance policies. The endorsement is enforceable and Defendants summary judgment should be denied.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Steadfast Insurance Company prays that upon the hearing of this matter the Court deny Defendants SMX 98, Inc. and Spaw Maxwell Company L.P.'s motion for partial summary judgment and grant Steadfast all other relief in which it is justly entitled.

Respectfully submitted,

**COATS, ROSE, YALE, RYMAN & LEE, P.C.**

By:   /s/ Carol P. Keough
Carol P. Keough
State Bar No 11321950
3 E. Greenway Plaza, Suite 2000
Houston, Texas 77046-0307
Telephone: (713) 651-0111
Facsimile: (713) 651-0220

**ATTORNEYS FOR PLAINITFF
STEADFAST INSURANCE COMPANY**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record by electronic filing and/or certified mail, return receipt requested, and/or facsimile on September 6, 2007.

/s/ Carol P. Keough
Carol P. Keough
