**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| STEADFAST INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2736 |
| | § | |
| SMX 98, INC. and SPAWMAXWELL COMPANY, L.P., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This case involves a contract dispute between a surplus-lines insurer, Steadfast Insurance Company, and its insureds, SMX 98, Inc. and SpawMaxwell Company, L.P. (together, "SpawMaxwell"). The dispute arises from an endorsement requiring SpawMaxwell, a construction company, to have its subcontractors obtain commercial general liability insurance policies that met certain conditions. The endorsement required the subcontractors' policies to have certain coverages and limits, name SpawMaxwell as an additional insured, and be issued by insurance companies with an "'A+' Best rating or better." The endorsement stated that a failure to comply would not change SpawMaxwell's coverage but would result in the subcontractors being considered "to be [the insured's] employees for the purpose of computing rate and premium and such premium will be charge[d] at a rate of: $20 per $1,000 of uninsured/uninsured sub cost." Steadfast sued for breach of contract, claiming that an audit of the subcontractors' insurance revealed that some did not meet all the endorsement's conditions. Steadfast seeks at least $518,212.22 under the endorsement.

In ruling on cross-motions for summary judgment, this court concluded that the endorsement's damages provision was an unenforceable penalty. (Docket Entry No. 54). Steadfast

argued, and this court agreed, that the provision applies to both subcontractors without any insurance and subcontractors with insurance that did not meet the Endorsement's conditions, including the condition of an insurer with a Best rating of A+ or better. (*Id.*). The damages provision was not based on any actuarial or other principles that reflected the extent of the breach or the risk of harm to Steadfast as a result of the contractual violation. Rather, the damages provision imposed the same financial consequence regardless of what insurance condition was violated. (*Id.*).

Steadfast filed an amended complaint, (Docket Entry No. 63), and SpawMaxwell filed an amended answer, (Docket Entry No. 68). SpawMaxwell asserted that under the Texas Insurance Code, the warranty endorsement and the insurance contract were unenforceable. The parties then filed additional cross-motions for summary judgment. On March 30, 2009, this court denied SpawMaxwell's motion for partial summary judgment that the insurance contract is unenforceable under § 101.201 of the Texas Insurance Code and granted Steadfast's motion for partial summary judgment on some of SpawMaxwell's affirmative defenses and counterclaims. (Docket Entry No. 103). This case was set for jury selection and trial. (Docket Entry No. 106).

In its pretrial memorandum, Steadfast moved for reconsideration of this court's January 3, 2008 decision that the premium-charge provision is an unenforceable penalty. (Docket Entry No. 126). Steadfast challenged as incorrect this court's statement in the memorandum and opinion that the endorsement "stated that the subcontractors' insurance naming SpawMaxwell as an additional insured would be considered primary insurance, with the Steadfast policy excess to the limits of the subcontractor insurance limits." (Docket Entry No. 54). Steadfast argues that under the endorsement, it is the primary insurer, not excess, in every case unless SpawMaxwell is an additional insured on its subcontractor's A+ or better policy. (*Id.*). Steadfast contends that because

it is the primary insurer whenever SpawMaxwell's subcontractors had no insurance or less than A+ insurance, the premium-charge provision is enforceable. (*Id.*). SpawMaxwell responded, (Docket Entry No. 128), Steadfast replied, (Docket Entry No. 131), and SpawMaxwell filed a surreply. (Docket Entry No. 134). Steadfast moved to strike the surreply. (Docket Entry No. 136).

SpaxMaxwell also filed a pretrial memorandum in which it argues that the Subcontractors Warranty Endorsement is unenforceable because it does not satisfy the statute of frauds. (Docket Entry No. 120). SpawMaxwell filed a supplemental brief addressing the statute of frauds defense. (Docket Entry No. 134), and Steadfast responded, (Docket Entry No. 135).

Based on a careful review of the motions, responses, and replies; the record; the arguments of counsel; and the applicable law, this court denies Steadfast's motion for reconsideration and concludes that SpawMaxwell cannot rely on the statute of frauds to argue that the contract is unenforceable. The reasons are explained in detail below.

**I.      Background**

The relevant background is detailed in this court's previous memoranda and opinions. Briefly, Steadfast is a surplus-lines insurer. (Docket Entry No. 36, Ex. A at 1). A party unable to obtain coverage for a Texas risk from a licensed Texas insurer may obtain coverage from an insurer not licensed in Texas but who is an "eligible" surplus lines insurer. SpawMaxwell sought to renew its Steadfast policy for the 2002–2003 year by submitting applications through an insurance agent, Insurance Associates of the Southwest ("IAS"), to a broker, Heath Insurance Brokers, Inc. ("Heath"). (*Id.* at 2, Ex. A at SFI 000202–216). Heath received a quote from Steadfast that identified "Notable Endorsements" in a section entitled "Amendments to Coverage." The "Notable Endorsements" included "Subcontractor's warranty ($1/1 limits w/ A+ carrier to be met or surcharge

3

of $20 rate x uninsured/underinsured sub costs)." (*Id.*, Ex. A at SFI 000224). On May 28, 2002, Heath sent the Steadfast renewal quote to IAS, SpawMaxwell's agent, and IAS accepted the quote. (*Id.*, Ex. A. at SFI 000236).

On May 29, 2002, Heath issued a binder for the insurance coverage. (Docket Entry No. 36, Ex. A at SFI 000226–228). Like the quote, the binder contained an "Amendments to Coverage" section, which included a reference to the subcontractors' warranty endorsement. (*Id.*, Ex. A. at SFI 000227). Heath sent the binder to IAS the same day. (*Id.*, Ex. A at SFI 000230–235). On June 14, 2002, Heath sent the permanent insurance policy to IAS. (*Id.*, Ex. A. at SFI 000229). The cover letter enclosing the policy asked that IAS review the policy and advise Heath immediately if there were any corrections, omissions, or changes. (*Id.*).

Steadfast issued SpawMaxwell commercial general policy number SCO 5215529-01 (the "Policy") with effective dates of May 29, 2002 through May 29, 2003. (Docket Entry No. 36, Ex. B). Under the heading "Other Insurance," the Policy provided:

> If other valid and collectible insurance is available to the insured for a loss we cover . . . our obligations are limited as follows:
>
> a. Primary Insurance
>
> This insurance is primary except when there is other insurance applying on a primary basis. Then b. below applies.
>
> b. Excess Insurance
>
> This insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis.

(Id., Ex. B at SFI 000049). The Policy included Endorsement Number 10, the Subcontractors Maintenance of Liability Limits Endorsement ("Subcontractors' Warranty Endorsement"). (*Id.*, Ex.

4

B at SFI 000067–68). The Subcontractors' Warranty Endorsement stated that SpawMaxwell would require all subcontractors shown on the "Schedule of Designated Subcontractors" to:

> (a) Maintain Commercial General Liability insurance coverage provided by: an insurance company with "A+" Best rating or better;
>
> (b) Provide minimum limits as respects Coverage A. Bodily injury or Property damage of $1,000,000 for Each Occurrence. $1,000,000 General Aggregate, $1,000,000 Products Completed Operations Aggregate;
>
> (c) Have you [SpawMaxwell] added to their policies as an Additional Insured in accordance with a. and b. above;
>
> (d) Provide you with Certificates of Insurance showing the coverage requirements indicated in a., b., and c. above.

(*Id.*, Ex. B at SFI 000067). The Subcontractors' Warranty Endorsement stated that failure to comply with these conditions would not alter the coverage the Policy provided. Failure to comply, however, would result in Steadfast considering the noncompliant independent subcontractors to be SpawMaxwell's employees for the purpose of computing "rate and premium and such premium will be charge [sic] at a rate of $20 per $1,000 of uninsured/uninsured sub cost," (the "premium-charge provision"). (*Id.*, Ex. B at SFI 000068). The Endorsement also stated that the subcontractors' insurance naming SpawMaxwell as an additional insured would be considered primary insurance, with the Steadfast Policy excess to the limits of the subcontractor insurance limits. (*Id.*).

After the Policy period ended, Steadfast audited the subcontractors' insurance. Steadfast concluded that SpawMaxwell had failed to comply with the Subcontractors' Warranty Endorsement by having subcontractors with either no insurance or with insurance issued by carriers with Best ratings lower than "A." (Docket Entry No. 36, Ex. C). SpawMaxwell paid Steadfast $41,196 for those subcontractors with no insurance at all. SpawMaxwell paid this amount based on an invoice

from Steadfast that calculated the premium for contracts with no insurance using the Endorsement premium-charge formula of $20 per $1,000 of "subcost." (*See id.* at 5, Ex. D at 3; Docket Entry No. 37 at 2). In a letter dated October 25, 2004, Steadfast demanded an additional $518,212.22 for those subcontracts in which the subcontractors had insurance but the insurers were rated below "A" or "A+".[1] (Docket Entry No. 36, Ex. B at SFI 000028). SpawMaxwell refused to pay and Steadfast sued.

Steadfast moved for summary judgment on its claims that the Subcontractors' Warranty Endorsement is enforceable, that SpawMaxwell breached the contract, and that SpawMaxwell owes $518,212.22 in surcharge. Steadfast argued that the Subcontractors' Warranty Endorsement requires the additional premium for both uninsured subcontracts and subcontracts with insurance that did not meet the Endorsement's conditions, including the condition of an insurer with a Best rating of A+ or better. SpawMaxwell cross-moved for partial summary judgment that the endorsement only applies to "uninsured" subcontractors with no insurance, rather than "underinsured" subcontractors that have insurance with companies with Best ratings below "A+". SpawMaxwell also sought summary judgment on its defense that if the damages provision in the endorsement applied to breaches based on both uninsured and underinsured subcontractors, it is a liquidated damages clause that is an unenforceable penalty. On January 3, 2008, this court denied Steadfast's motion for

---

[1] It is unclear whether Steadfast seeks to recover the premium amount for those subcontractors insured by companies rated below "A+" or only those insured by companies rated below "A." Although the Subcontractors Warranty Endorsement requires that the subcontractors be insured by companies rated "A+" or better and Steadfast's amended complaint refers to this requirement, Steadfast's audit appears to note as inadequately insured only those subcontractors insured by companies rated "A-" or below. Steadfast's previous summary judgment motion appeared to seek recovery only for those subcontracts insured by companies rated "A-" or below. (*See* Docket Entry No. 36 at 16). Steadfast noted that its summary judgment motion should not be read to constitute a waiver of its right to seek additional amounts from a jury and that Steadfast may evaluate additional charges based on those subcontractors insured by companies with an "A" rating. (*Id.* at 17 n.2).

summary judgment and granted SpawMaxwell's motion for partial summary judgment in part, "finding that if the damages provision of the endorsement is interpreted to cover both uninsured subcontractors and subcontractors who have insurance issued by companies that have Best ratings of below "A+", as Steadfast argues, it is an unenforceable liquidated damages provision." (Docket Entry No. 54). "As a matter of law, the provision does not reasonably estimate just compensation for breaching the Endorsement." (*Id.*). This court denied the parties' cross-motions for summary judgment as to the nature of the breach and the amount of damages for the breach. SpawMaxwell does not dispute that some of its subcontractors obtained insurance from companies with ratings lower than "A+". Summary judgment was denied because there remain "genuine issues of disputed fact material to determining how often this occurred, what the ratings of the subcontractors' insurers were, and what is the proper measure of damages for those breaches." (*Id.*, at 31).

   Steadfast filed an amended complaint, (Docket Entry No. 63), and SpawMaxwell filed an amended answer, (Docket Entry No. 68). SpawMaxwell asserted that under the Texas Insurance Code, the Subcontractors' Warranty Endorsement and the Policy were unenforceable. The parties then filed additional cross-motions for summary judgment. On March 30, 2009, this court denied SpawMaxwell's motion seeking partial summary judgment that the Policy was unenforceable under § 101.201 of the Texas Insurance Code and granted Steadfast's cross-motion seeking summary judgment that § 101.201 did not preclude enforcement of the Policy; granted Steadfast's motion for partial summary judgment on SpawMaxwell's affirmative defense that the Policy was illegal under the Texas Insurance Code; and granted Steadfast's motion for partial summary judgment on SpawMaxwell's affirmative defense of accord and satisfaction and SpawMaxwell's counterclaims for breach of contract and deceptive insurance practices.

In the January 3, 2008 Memorandum and Opinion, this court interpreted the Subcontractors' Warranty Endorsement as stating that "the subcontractors' insurance naming SpawMaxwell as an additional insured would be considered primary insurance, with the Steadfast Policy excess to the limits of the subcontractor insurance limits." (Docket Entry No. 54, at 5–6). In moving for reconsideration, Steadfast argues that the Endorsement should be interpreted to mean that Steadfast is the primary insurer in all cases except when SpawMaxwell's subcontractor has insurance that satisfies the Endorsement's requirements, issued by an insurer with an A+ or better rating. Steadfast's motion for reconsideration is examined against the applicable legal standards and the record.

## II.     Steadfast's Motion for Reconsideration

### A.     The Legal Standard

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *Sheperd v. International Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004); *see also St. Paul Mercury Ins. Co. v. Fair Grounds Corp.,* 123 F.3d 336, 339 (5th Cir. 1997). Reconsideration motions are generally analyzed under the standards for a motion to alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n. 10 (5th Cir. 1998). If a motion for reconsideration is filed within ten days of the judgment or order of which the party complains, it is considered a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion. *Id.* (internal citations omitted); *see also Lavespere v. Niagara Machine & Tool Works*, *Inc.*, 910 F.2d 167, 173 (5th Cir. 1990) ("Under which Rule the motion falls turns on the time at which the motion is served. If the motion is served within ten days of the rendition of judgment, the motion falls under Rule 59(e); if

it is served after that time, it falls under Rule 60(b)."), *abrogated on other grounds* by *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994) (en banc).

The ten-day deadline, however, does not apply to motions for reconsideration of interlocutory orders. *T-M Vacuum Products, Inc. v. TAISC, Inc.*, 2008 WL 2785636, at *2 (S.D. Tex. July 16, 2008). A court retains the power to revise an interlocutory order before the entry of judgment adjudicating all the parties' claims, rights, and liabilities. FED. R. CIV. P. 54(b). A court may consider a motion to reconsider an interlocutory order so long as the motion is not unreasonably delayed. *Id.*; *see also Standard Quimica De Venezuela v. Cent. Hispano Int'l, Inc.*, 189 F.R.D. 202, 205 (D.P.R. 1999). Rule 59(e)'s standards are applied to motions for reconsideration of interlocutory orders. *T-M Vacuum Products*, 2008 WL 2785636, at *2.

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re TransTexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Relief is also appropriate when there has been an intervening change in the controlling law. *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). The Fifth Circuit warns that altering, amending, or reconsidering a judgment under Rule 59(e) is an extraordinary remedy that courts should use sparingly. *Templet*, 367 F.3d at 479; *see also* 11 CHARLES A. WRIGHT, ARTHUR R. MILLER,& MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1, at 124 (2d ed. 1995). Because granting a Rule 59(e) motion is an extraordinary remedy, the Rule 59(e) standard "favors denial of motions to alter or

amend a judgment." *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

      **B.**      **Interpreting the Endorsement**

The interpretation of insurance polices is governed by the same rules that govern construction of other written contracts. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995) (citation omitted). A court reads all parts of the policy together and exercises caution not to isolate particular sections or provisions from the contract as a whole. *Provident Life & Accident Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) (citations omitted). A court's primary concern in construing a contract is to determine the parties' intent. *Harrison v. Great Am. Assurance Co.*, 227 S.W.3d 890, 893 (Tex. App.—Dallas 2007, no pet.). Terms in an insurance contract will be given their ordinary meaning unless the policy shows that the words were meant in a different sense; an ambiguity does not arise simply because the parties offer opposing interpretations. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000). A court determines meaning by looking at the contract as a whole in light of the circumstances present when the parties entered the contract. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). Parol evidence is not admissible for the purpose of creating an ambiguity. *See Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 517, 243 S.W.2d 154, 157 (Tex. 1951); *Lewis v. E. Tex. Fin. Co.*, 136 Tex. 149, 146 S.W.2d 977, 980 (1941). If a contract is determined to be ambiguous, then a court may consider extraneous evidence to ascertain its meaning. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). The meaning of an ambiguous contract is a question of fact. *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1980).

      The Subcontractors' Warranty Endorsement provides as follows:

> The insurance provided by this policy is subject to the following additional provisions, which in the event of conflict with any provision elsewhere in the policy shall control the application of insurance to which this endorsement applies.
>
> 1. You will require that all subcontractors shown in the Schedule of Designated Subcontractors, while performing operations for during the period of their contract with you will:
>
>    a. Maintain Commercial General Liability insurance coverage provided by:
>
>    > an insurance company with an "A+" Best rating or better
>
>    b. Provide minimum limits on coverage as respects Coverage A. Bodily Injury or Property damage of $1,000,000 Each Occurrence. $1,000,000 General Aggregate, $1,000,000 Products Completed Operations. Aggregate;
>
>    c. Have you added to their policies as an Additional Insured in accordance with a. and b. above.;
>
>    d. Provide you with Certificates of Insurance showing the coverage requirements indicated in a, b, and c. above.
>
> 2. Your failure to comply with the conditions above will not alter the coverage provided by this policy. However, should you fail to comply, we will consider such independent contractors to be your employees for the purpose of computing rate and premium and such premium will be charged at a rate of:
>
>    > $20 per $1,000 of uninsured/uninsured sub cost.
>
> 3. Commercial General Liability Insurance maintained by your subcontractors, within which you are an Additional Insured, will be considered primary insurance and our policy will be considered excess of the limits of insurance of that subcontractor's primary coverage, notwithstanding any contrary language that may exist in any Other Insurance condition of the policy.
>
> 4. All other terms and conditions of the policy not affected by this endorsement remain the same.

(Docket Entry No. 36, Ex. B).

Steadfast argues that under the Policy, it was the primary insurer for all subcontractors whose insurance carrier did not have a Best rating of A+ or better. (Docket Entry No. 126). Steadfast

11

relies on the Policy language providing that Steadfast "will pay those sums that the insured becomes legally obligated to pay as 'damages' because of 'bodily injury' and 'property damage' to which this insurance applies." (Docket Entry No. 36, Ex. B at SFI 000041). Steadfast contends that under this provision, it offered SpawMaxwell "unaltered coverage as the primary insurer except when SpawMaxwell has an A+ carrier or better with additional insured coverage." (Docket Entry No. 131). Steadfast argues that reading the endorsement as a whole, "[i]nsurance for subcontractors that is with a carrier rated anything other than 'A+' or better will be just as if SpawMaxwell had no insurance at all for the subcontractor." (Docket Entry No. 126, at 4). According to Steadfast, subparagraph 3 of the Endorsement provides that when there is no insurance or where a subcontractor's insurer is rated less than A+, Steadfast is not an excess insurer but the primary insurer. Steadfast contends that because it was the primary insurer, the premium-charge provision was a proper rate to charge for the insurance based on the risks presented by the subcontractors, who are treated as employees of SpawMaxwell. (*Id.*).

Steadfast's arguments are unpersuasive. With respect to "Other Insurance," the Policy provides:

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:
>
> a. Primary Insurance
>
> This insurance is primary except when there is other insurance applying on a primary basis. Then b. below applies.
>
> b. Excess Insurance
>
> This insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis.

(Docket Entry No. 36, Ex. B). The Policy provides that when other insurance applies on a primary

12

basis, the Steadfast policy is excess. The Policy further states that insurance "maintained" by a subcontractor in which SpawMaxwell is named as an "additional insured" will be considered primary insurance and Steadfast's policy will be considered excess to the limits of that insurance. The Policy does not define "maintained" or "additional insured." Under the terms of subparagraph 3 of the Endorsement, the subcontractor's insurance is primary and Steadfast's policy is excess whenever a subcontractor "maintains" insurance in which SpawMaxwell is named as an additional insured, "notwithstanding any contrary language that may exist in any Other Insurance condition of the policy." (Docket Entry No. 36, Ex. B). Subparagraph 3 does not mention the Best rating of a subcontractor's insurer. Subparagraph 2 does not speak to whether a subcontractor's insurance policy is primary or excess. The Policy language is unambiguous and properly interpreted as meaning that a subcontractor's insurance is primary in all instances when the subcontractor has insurance and SpaxMaxwell is named as an additional insured in that policy.

Steadfast's argument is also inconsistent with its position in a personal-injury lawsuit filed against SpawMaxwell and one of its subcontractors. In that case, an individual named Paul Green sued SpawMaxwell and Dynamic Glass, a subcontractor, after a large piece of glass fell on him. Dynamic Glass was insured by Amerisure, an "A" rated company, and SpawMaxwell was named as an additional insured in Dynamic Glass's Amerisure policy. (Docket Entry No. 134, Ex. D). Steadfast demanded that Amerisure provide primary insurance coverage for SpawMaxwell based on subparagraph 3 of the Endorsement. (*Id.*). Amerisure acknowledged that SpawMaxwell was an additional insured and provided primary coverage for SpawMaxwell's liability in that suit. (*Id.*, Ex. E).

Steadfast argues that its position in a lawsuit filed after the Policy was signed is inadmissible parol evidence because it contradicts the "explicit language of the parties' agreement." (Docket

13

Entry No. 136, at 2).[2]  This argument is similarly unpersuasive.  The Policy language is clear and unambiguous and this court's interpretation of subparagraph 3 of the Endorsement is not based on Steadfast's position in the *Green* lawsuit.  Assuming, however, that the Policy language is ambiguous, the fact that Steadfast has taken the position that it was the excess insurer under subparagraph 3 when the subcontractor's insurance was not issued by a insurer with the A+ rating required in the Endorsement would be highly probative of the parties' intent that Steadfast is the excess insurer to any insurance the SpawMaxwell contractor had, and the primary insurer only if the subcontractor was uninsured or did not name SpawMaxwell as an additional insured.

Steadfast has failed to show a manifest error of law or fact that would warrant reconsideration of this court's January 2008 ruling.  The motion for reconsideration is denied.

## III.    The Statute of Frauds Defense

SpawMaxwell argues that the Subcontractors' Warranty Endorsement does not comply with the statute of frauds because the Endorsement was not signed by SpawMaxwell.  As a result, according to SpawMaxwell, the Endorsement is unenforceable.

The Texas Statute of Frauds requires all contracts that cannot be performed within one year from its date to be in writing and signed by the parties obligated.  TEX. BUS. & COM. CODE § 26.01(a).  Whether a contract falls within the statute of frauds is a question of law.  *Beverick v. Koch Power Co.*, 186 S.W.3d 145, 149 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

It is undisputed that the Policy is signed by SpawMaxwell.  "[W]hen an unsigned endorsement is attached to a policy at the time of its delivery to an insurance contract as occurred

---

[2]  Steadfast also moved to strike the exhibits attached to SpawMaxwell's surreply, which included the subcontractor agreement between SpawMaxwell and Dynamic Glass and the demand letter in the Green lawsuit. (Docket Entry No. 136).  The motion to strike is denied.  This court did not rely on this evidence to interpret the unambiguous Policy language.

14

here, the endorsement becomes part of the policy—signing the policy has the effect of signing all endorsements properly attached." *Callaway Development Corp. v. Steadfast Ins. Co.*, 2007 WL 1032303, at *2 (W.D. Tex. Apr. 3, 2007); *see also Dunn v. Traders & Gen. Ins. Co.*, 287 S.W.2d 682, 687 (Tex. Civ. App.—Dallas 1956, writ refused n.r.e.) ("[R]iders attached to a policy, when delivered, are properly treated as a part thereof, though not independently signed; as the policy signatory is inclusive of all riders."). The Subcontractors' Warranty Endorsement is part of the Policy and does not require a signature separate from that on the Policy itself to comply with the statute of frauds. The fact that SpawMaxwell did not sign the Subcontractors' Warranty Endorsement does not make it unenforceable under the statute of frauds.

**IV.     Conclusion**

Steadfast's motion for reconsideration is denied. SpawMaxwell cannot rely on the statute of frauds to argue that the contract is unenforceable. This case may be called for jury selection and trial between **October 26, 2009 and November 6, 2009**. The final pretrial conference is set for **October 19, 2009** at 9:00 a.m.

SIGNED on September 28, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge